**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KORTEK INDUSTRIES PTY LTD., | § | Civil Action No. 2:26-cv-694 |
| | § | |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| SCHNEIDER ELECTRIC USA, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Kortek Industries Pty Ltd. ("Kortek") files this Complaint for Patent Infringement and Damages against Schneider Electric USA, Inc. ("Schneider" or "Defendant"), and would respectfully show the Court as follows:

## PARTIES

1. Plaintiff Kortek is an Australian proprietary (private) company limited by shares with its principal place of business located at PO Box 323, Alderley, Queensland 4051, Australia. Kortek is an Australian engineering firm that develops sensors, controllers, and gateways for building cloud-connected systems.

2. Defendant Schneider Electric USA, Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal office at 70 Mechanic Street, Foxboro, Massachusetts 02035, and is registered to do business in the State of Texas. Schneider has admitted each of those facts. *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP, Answer, Defenses, and Counterclaims, Dkt. 18 at 3 (E.D. Tex. July 7, 2026) (responses to ¶¶ 4–7) (**Exhibit S**). Schneider has and maintains a regular and established place of business in this District

at its distribution center located at 1651 Enterprise Street, Athens, Texas 75751. Schneider may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701, which Schneider has admitted "serves as its registered agent in Texas." *Id.*

3. On information and belief, Schneider directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

**JURISDICTION AND VENUE**

4. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

5. This United States District Court for the Eastern District of Texas has general and specific personal jurisdiction over Schneider because, directly or through intermediaries, Schneider has committed acts within the District giving rise to this action and is present in and transacts and conducts business in and with residents of this District and the State of Texas.

6. Kortek's causes of action arise, at least in part, from Schneider's contacts with and activities in this District and the State of Texas.

7. Schneider has committed acts of infringement of the patents-in-suit within this District and the State of Texas by using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas products claimed by the patents-in-suit. Schneider, directly and through intermediaries, uses, sells, offers for sale, imports, ships, distributes, advertises,

promotes, and/or otherwise commercializes such infringing products into this District and the State of Texas. Schneider has placed such infringing products into the stream of commerce via established distribution channels with the knowledge and/or understanding that such products were being offered for sale, sold to, and/or used by customers in Texas and this District. Schneider regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

8. This Court has personal jurisdiction over Schneider pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*. Personal jurisdiction exists over Schneider because Schneider has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this District, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District. This Court has personal jurisdiction over Schneider, in part, because Schneider does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Eastern District of Texas that Schneider knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas. For example, Schneider is subject to personal jurisdiction in this Court because, *inter alia*, Schneider has a regular and established place of business in this District, and directly and through agents regularly does, solicits, and transacts business in the Eastern District of Texas. Accordingly, this Court's jurisdiction over Schneider comports with the constitutional standards of fair play and substantial justice and arises directly from Schneider's purposeful minimum contacts with the State of Texas.

9. This Court also has personal jurisdiction over Schneider because, in addition to Schneider's own online website and advertising directed to this District, Schneider has made its

products available within this judicial district, operates a distribution center within this District from which it stores, handles, and ships products, and employs personnel resident within this District. On information and belief, witnesses from Schneider's Athens, Texas distribution center will be required for deposition and/or trial.

10. Venue is proper in this Court as to Defendant Schneider Electric USA, Inc. under 28 U.S.C. § 1400(b), which is the sole and exclusive provision governing venue in patent infringement actions. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). Venue is proper here because Schneider has committed acts of infringement in this District and has a regular and established place of business in this District. *See In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017). Section 1400(b) speaks to judicial districts, not to divisions within a district; Schneider's regular and established place of business anywhere within the Eastern District of Texas therefore establishes venue in this District, and this action is properly brought in the Marshall Division. *See* 28 U.S.C. § 124(c)(4).

11. Schneider has a regular and established place of business in this District at 1651 Enterprise Street, Athens, Texas 75751, in Henderson County, which lies within the Eastern District of Texas. *See* 28 U.S.C. § 124(c)(1). Schneider has admitted as much. Answering the complaint in *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP (E.D. Tex.), Schneider stated: "Schneider admits that, as of the filing date of the complaint, it has facilities at the following address: 1651 Enterprise Street, Athens, Texas 75751." Answer, Defenses, and Counterclaims, Dkt. 18 at 5 (E.D. Tex. July 7, 2026) (response to ¶ 14). A true and correct copy of that Answer is attached hereto as **Exhibit S**. Schneider also publishes on its own website an ISO 45001:2018 certificate that identifies, by name and by street address,

"SCHNEIDER ELECTRIC USA, INC." at "1651 ENTERPRISE STREET, ATHENS, TX 75751, US" as a site whose management system has been audited and certified, with a certified scope covering "THE OCCUPATIONAL HEALTH AND SAFETY ACTIVITIES AND SUPPORTING PROCESSES ASSOCIATED WITH THE RECEIPT, STORAGE AND DISTRIBUTION OF FINISHED GOODS." The certificate, No. 196455-48-U-B, was issued by Bureau Veritas Certification Holding SAS – UK Branch on August 25, 2025, and states that its validity depends on a main certificate expiring October 12, 2028. That certificate is published by Schneider on its own website at https://download.se.com/files?p_Doc_Ref=ISO45K-Athens-TX-USA&p_enDocType=Quality+Certification+%26+Policy&p_File_Name=45K-EN-Rev+1.+Athens+USA+RA+2025.pdf (last visited August 13, 2026). A true and correct copy of the certificate is attached hereto as **Exhibit R**. The Athens facility is accordingly a physical, geographical place within this District from which Schneider receives, stores, and distributes finished goods. On information and belief, the premises are a distribution building with approximately forty-five loading docks, leased in their entirety to Schneider.

12. The Athens facility is not a transient or temporary location. It is a settled and permanent operation that Schneider staffs, operates, and holds out as its own, and Schneider's own personnel have described it in exactly those terms. Steve Ramsey, Schneider Electric's Manager of Logistics Operations, is publicly quoted by the Athens Economic Development Corporation as stating: "Shipping is very good from Athens, especially with Interstate 20 being so accessible. We service 53% of the United States from our Athens facility. We moved to Athens several years ago, and it was such a good decision to move here." Athens Economic Development Corporation, *Schneider Electric*, https://www.athenstexasedc.com/170/Schneider-Electric (last visited August 13, 2026). That statement, by Schneider's own logistics manager, establishes that Schneider has occupied the

Athens facility for years, that Schneider itself operates it, and that Schneider distributes goods from it on a national scale.

13. Schneider conducts business from the Athens facility and distributes products from it, as Schneider itself has admitted. Answering an allegation that it "uses these offices and warehouses to sell and distribute its products," Schneider responded: "Schneider admits it conducts business from the Athens facility including the distribution of products." *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP, Answer, Defenses, and Counterclaims, Dkt. 18 at 6 (E.D. Tex. July 7, 2026) (response to ¶ 15). Schneider staffs that facility with its own employees. On information and belief, multiple current Schneider Electric employees are located in Athens, Texas, holding positions there that include Distribution Operations Manager, Distribution Operations Supervisor, Operations Supervisor, Customer Satisfaction and Quality Manager, Help Desk Support Specialist, Senior Project Manager, Warehouse Associate, and order picker. The presence of Schneider's own employees conducting Schneider's business at that physical location establishes a regular and established place of business of Schneider itself. *See In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (a place of business generally requires "an employee or agent of the defendant to be conducting business at that place"); *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).

14. Schneider's presence in this District is further confirmed by its own admissions in other patent actions in this District. Answering the complaint in *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP (E.D. Tex.), Schneider responded to the allegation that venue is proper under 28 U.S.C. § 1400(b): "As of the time of this complaint and solely for purposes of this action, Schneider does not contest venue in this District." Answer, Defenses, and Counterclaims, Dkt. 18 at 4 (E.D. Tex. July 7, 2026) (response to ¶ 10) (**Exhibit S**).

In the same pleading Schneider admitted "that it offers products and services in this District"; "that it conducts business in Texas and derives revenue from goods and services provided to individuals in Texas and in this District"; and "that it sells products and services to customers in Texas, including in this District." *Id.* at 4–5 (responses to ¶¶ 11–13). Earlier, answering the complaint in *Advanced Meter Systems, LLC v. Schneider Electric USA, Inc.*, No. 4:24-cv-00489-SDJ (E.D. Tex.), Schneider stated that "Schneider Electric admits that it has a regular place of business within the Judicial District," that "Schneider Electric admits that venue is proper in this District," and that "Schneider Electric admits that this Court has specific and general personal jurisdiction over it." Answer and Counterclaims, Dkt. 7 at 2–3 (E.D. Tex. Nov. 1, 2024) (responses to ¶¶ 6–8). Schneider qualified those admissions as made for purposes of those actions. Kortek accordingly pleads each element of 28 U.S.C. § 1400(b) independently, and cites Schneider's admissions as further support.

15. Schneider has repeatedly appeared and litigated patent infringement actions in this District, including in this Division, without contesting venue. *See Automation Middleware Solutions, Inc. v. Invensys Systems, Inc.*, No. 2:15-cv-00898-RWS (E.D. Tex., Marshall Division) (naming Schneider Electric USA, Inc. as a defendant); *Data PowerWorks, LLC v. Schneider Electric SE*, No. 2:25-cv-00300-JRG (E.D. Tex., Marshall Division) (Schneider answered and asserted counterclaims; the docket reflects no motion to dismiss or to transfer for improper venue); *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP (E.D. Tex.). In *IOT Innovations*, Schneider asserted eight affirmative and other defenses — non-infringement, invalidity, prosecution history estoppel and disclaimer, limitations on damages under 35 U.S.C. § 286, license and implied license, equitable estoppel, laches and waiver, no willful infringement, and a reservation of defenses — and did not assert improper venue among them. Answer, Defenses,

and Counterclaims, Dkt. 18 at 32–34 (E.D. Tex. July 7, 2026) (Defenses I–VIII). Schneider further asserted counterclaims of its own in that action, invoking this Court's jurisdiction. *Id.* at 34 (Counterclaims).

16. Schneider has committed and continues to commit acts of infringement throughout this District, including by using, testing, selling, offering for sale, importing, distributing, shipping, advertising, and promoting the Accused Products (as defined below) to and among customers, distributors, retailers, contractors, and end users located in this District.

17. Schneider directs its commercial activity into this District through its own website and supports its products with its own materials. Schneider has admitted that "it is involved in some aspects of the operation of the domain se.com," and that "it provides documentation and support materials to customers regarding its products." *IOT Innovations LLC v. Schneider Electric USA, Inc.*, No. 2:26-cv-00334-JRG-RSP, Answer, Defenses, and Counterclaims, Dkt. 18 at 6–7 (E.D. Tex. July 7, 2026) (responses to ¶¶ 18, 20) (**Exhibit S**). Schneider uses that website and those materials to advertise, offer, sell, and instruct customers in this District in the use of the Accused Products.

**THE PATENTS-IN-SUIT**

18. On October 11, 2016, United States Patent No. 9,465,377 ("the '377 patent"), entitled "Wireless power, light and automation control," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the '377 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The '377 patent claims patent-eligible subject matter and is valid and enforceable. Kortek

is the exclusive owner by assignment of all rights, title, and interest in the ’377 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’377 patent. Schneider is not licensed to the ’377 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’377 patent whatsoever. A true and correct copy of the ’377 patent is attached hereto as **Exhibit A**.

19. On March 7, 2017, United States Patent No. 9,590,427 (“the ’427 patent”), entitled “Adaptable wireless power, light and automation system,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’427 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The ’427 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’427 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’427 patent. Schneider is not licensed to the ’427 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’427 patent whatsoever. A true and correct copy of the ’427 patent is attached hereto as **Exhibit B**.

20. On December 8, 2020, United States Patent No. 10,862,313 (“the ’313 patent”), entitled “Adaptable wireless power, light and automation system,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’313 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written

assignments recorded in the United States Patent and Trademark Office. The ’313 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’313 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’313 patent. Schneider is not licensed to the ’313 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’313 patent whatsoever. A true and correct copy of the ’313 patent is attached hereto as **Exhibit C**.

21. On October 1, 2019, United States Patent No. 10,429,869 (“the ’869 patent”), entitled “Wireless power, light and automation control,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’869 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The ’869 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’869 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’869 patent. Schneider is not licensed to the ’869 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’869 patent whatsoever. A true and correct copy of the ’869 patent is attached hereto as **Exhibit D**.

22. On April 19, 2016, United States Patent No. 9,319,234 (“the ’234 patent”), entitled “Modular wireless power, light and automation control,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’234 patent and its underlying

patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The ’234 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’234 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’234 patent. Schneider is not licensed to the ’234 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’234 patent whatsoever. A true and correct copy of the ’234 patent is attached hereto as **Exhibit E**.

23. On March 7, 2017, United States Patent No. 9,589,459 (“the ’459 patent”), entitled “Modular wireless power, light and automation control,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’459 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The ’459 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’459 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’459 patent. Schneider is not licensed to the ’459 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’459 patent whatsoever. A true and correct copy of the ’459 patent is attached hereto as **Exhibit F**.

24. On February 7, 2023, United States Patent No. 11,574,535 (“the ’535 patent”), entitled “Adaptable wireless power, light and automation system for household appliances,” was duly and legally issued by the USPTO to Barrie Davis, Benjamin Davis, and Matthew Davis, who conveyed

to Kortek Industries Pty Ltd all rights, title, and interest in and to the invention of the ’535 patent and its underlying patent applications, including the right to sue and recover for patent infringements, by written assignments recorded in the United States Patent and Trademark Office. The ’535 patent claims patent-eligible subject matter and is valid and enforceable. Kortek is the exclusive owner by assignment of all rights, title, and interest in the ’535 patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the ’535 patent. Schneider is not licensed to the ’535 patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the ’535 patent whatsoever. A true and correct copy of the ’535 patent is attached hereto as **Exhibit G**.

25. The ’377, ’427, ’313, ’869, ’234, ’459, and ’535 patents are collectively referred to herein as the “Kortek Patents” or the “patents-in-suit.”

26. Plaintiff Kortek is the owner of the entire right, title, and interest in and to the Kortek Patents. Each of the Kortek Patents is presumed valid under 35 U.S.C. § 282.

27. The Kortek Patents are members of a family of patents that descend from international applications filed by Kortek beginning in 2011, including PCT Application No. PCT/AU2011/001666, filed December 29, 2011, and PCT Application No. PCT/AU2012/000959, filed August 15, 2012. For example, the ’377 patent issued from U.S. Application No. 13/985,549, the U.S. national stage of PCT/AU2011/001666, and the ’869 patent issued from a continuation of that same application. Kortek’s investment in this patent family thus dates back well over a decade.

28. The Kortek Patents generally disclose and claim devices, systems, and methods for the wireless control, measurement, and automation of power, lighting, and other electrical equipment. The Kortek Patents identify problems with conventional power, lighting, and automation control

systems, which typically required dedicated wiring, proprietary controllers, and fixed configurations that were expensive to install, difficult to adapt or reconfigure, and prone to technological obsolescence.

29. The devices, systems, and methods claimed in the Kortek Patents were not well-understood, routine, or conventional at the time of the inventions. Rather, the claimed inventions improve the functioning of power, light, and automation control systems themselves, including, *inter alia*, through specific arrangements of wireless controllers, sensors, and switching devices that permit electrical equipment to be securely monitored, controlled, and automated over a local wireless network or cloud platform.

30. Kortek has complied with the marking provisions of 35 U.S.C. § 287 to the extent applicable. In addition, 35 U.S.C. § 287 does not limit Kortek's recovery of damages as to the asserted method claims of the Kortek Patents.

**ACCUSED INSTRUMENTALITIES**

31. Schneider manufactures, uses, tests, markets, offers for sale, sells and/or imports into the United States WiFi-enabled devices, including its X Series line of WiFi- and Matter-enabled smart switches, dimmers, and receptacles that are controlled and monitored through the Schneider Home app (*see, e.g.*, https://www.se.com/us/en/product/SQR141U1WHWM/switch-x-series-single-pole-3-way-wifi-matter-white/ (last visited August 13, 2026)), and its Schneider Charge family of WiFi-enabled, app-controlled electric vehicle charging stations (*see, e.g.*, https://www.se.com/us/en/product-range/405075119-schneider-charge-ac/ (last visited August 13, 2026)). Hereafter, the term "Accused Instrumentalities" or "Accused Products" refers to all products manufactured, used, tested, imported, or sold by or on behalf of Schneider practicing the patents-in-suit and all processes employed by Schneider that practice the patents-in-suit, consisting

of at least Schneider's WiFi-enabled products, including, by way of example and without limitation, the list of exemplary products attached hereto as **Exhibit Q**.

32. The claim charts attached hereto as **Exhibits J through P** are exemplary only. **Exhibits L and M** address Schneider's X Series WiFi- and Matter-enabled smart switches, dimmers, and receptacles, and **Exhibits J, K, N, O, and P** address Schneider's WiFi-enabled electric vehicle charging products. Kortek's identification of the Accused Products is not limited to the products addressed in those exemplary claim charts, and Kortek reserves the right to identify additional Accused Products, product families, model numbers, and SKUs through discovery and in its Infringement Contentions.

## BACKGROUND

33. Kortek Industries Pty Ltd is an Australian proprietary (private) company focused on the design of an Industrial Internet of Things (IIoT) energy control platform comprising enterprise-grade hardware, firmware, and know-how. Kortek's technology includes a range of power measurement and switching devices that allow utilities and industrial users to securely monitor, control, and automate the power supplied to electrical equipment through a local wireless network or cloud platform. Applications include demand response, grid management, industrial automation, and predictive maintenance. Kortek's patented architecture is designed to give infrastructure customers reliable, adaptable devices that can be purchased in quantity and installed without concern for the technological obsolescence common to competing Internet of Things solutions.

34. Kortek was created to commercialize the intellectual property and engineering of Xitel Pty Ltd. ("Xitel"). Kortek's founder, Barrie Davis, formed Xitel in 1976 to provide contract design services for electronic products built around microprocessors, a relatively new technology at the

time. Mr. Davis has designed, manufactured, and sold electronic products for more than 45 years, and was awarded a Master's Degree in Electrical Engineering by the University of Adelaide for his design of a programmable, microprocessor-controlled CRT terminal that entered production in the early 1970s and was sold in volume to the Australian Federal Government and to utilities.

35. Kortek was established in 2013 and is focused on creating embedded architecture and devices for the control and measurement of electrical equipment in infrastructure applications, across industrial, agricultural, medical, utility, and municipal market verticals.

36. As an early entrant in the Internet of Things, Kortek has continued to file patent applications and holds an international patent portfolio, including the Kortek Patents. That portfolio includes at least fourteen PCT filings, more than ten national-phase and divisional applications, and thirty-nine granted patents in the United States, the European Union, Japan, Australia, Korea, and China.

**DEFENDANT'S PRE-SUIT KNOWLEDGE OF THE KORTEK PATENTS AND WILLFUL INFRINGEMENT**

37. Defendant and Schneider Electric (Australia) Pty Ltd are wholly owned subsidiaries of Schneider Electric SE. Kortek had multiple communications with Defendant and Schneider Electric (Australia) Pty Ltd regarding Kortek's patented technology. Communications commenced in 2016, when Kortek discussed the patented technology with the Australian entity's Vice President of Marketing Communications and Digital Customer Experience with the intention of establishing a patent licensing and/or OEM business relationship. Post-meeting, Kortek was informed that the Vice President of Marketing Communications and Digital Customer Experience was "*following up from your visit with relevant Schneider people. It is being discussed and debated*

*and he will get back to you asap*." Further communications were unexpectedly terminated after that without any reason provided. *See* **Exhibit H**.

38. Kortek, through its agent, had contact with the Defendant's Executive Vice President, Chief Technology and Platform Officer in 2018. The intention of the discussions was to establish a patent licensing and/or OEM business relationship concerning Kortek's patented technology. *See* **Exhibit I**. Further communications were unexpectedly terminated after Kortek requested a Non-Disclosure Agreement.

39. As a result of these communications, Defendant has had knowledge of Kortek, Kortek's patented technology, and Kortek's patent portfolio since at least 2016, and in any event since at least 2018. The 2018 communications described above were with Defendant's own Executive Vice President, Chief Technology and Platform Officer. Knowledge of Kortek and of Kortek's patented technology and patent portfolio was accordingly communicated to and within the Schneider Electric corporate group, including Defendant itself.

40. On information and belief, having been made aware of Kortek's patented technology and patent portfolio, Defendant knew or should have known of each of the Kortek Patents as it issued, including the '869, '313, and '535 patents, which issued after the parties' communications. Alternatively, Defendant was willfully blind to the Kortek Patents, having taken deliberate actions to avoid learning of Kortek's patent rights after terminating communications with Kortek.

41. At the latest, Defendant has had actual knowledge of each of the Kortek Patents and of its infringement thereof since the filing and service of this Complaint. Notwithstanding that knowledge, Defendant has continued, and on information and belief will continue, to make, use, test, sell, offer for sale, and import the Accused Products without authorization. Defendant's

ongoing infringement of the Kortek Patents is deliberate and willful and merits increased damages under 35 U.S.C. § 284.

**COUNT I**

**PATENT INFRINGEMENT OF THE ’377 PATENT**

42. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

43. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the ’377 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Schneider’s Accused Products.

44. Schneider also indirectly infringes the ’377 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least 2018) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the ’377 patent (such as its customers in this District and throughout the United States). Schneider continues to induce infringement of the ’377 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’377 patent (since at least 2018), it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’377 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers’ infringement because, with knowledge of the ’377 patent, Schneider supplies the technology that allows its customers to infringe the patent.

45. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’377 patent. On information and belief, Schneider will continue to

encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the ’377 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’377 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Schneider’s Accused Products (which are acts of direct infringement of the ’377 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the ’377 patent but took deliberate actions to avoid learning of these facts.

46. On information and belief, Schneider’s infringement of the ’377 patent has been willful and merits increased damages.

47. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the ’377 patent since at least 2018.

48. On information and belief, Schneider has made no attempt to design around the claims of the ’377 patent.

49. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’377 patent were invalid.

50. On information and belief, Schneider’s Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

51. Kortek has been damaged as the result of Schneider’s willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the ’377 patent unless and until it is enjoined by this Court.

52. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the ’377 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’377 patent.

53. The claim chart attached hereto as **Exhibit J** describes how the Accused Products practice every element of at least exemplary claim 1 of the ’377 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit J are representative of the components and functionality present in the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider’s infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the ’377 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court’s scheduling order.

## COUNT II

## PATENT INFRINGEMENT OF THE ’427 PATENT

54. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

55. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the ’427 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Schneider’s Accused Products.

56. Schneider also indirectly infringes the ’427 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least

2018) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the ’427 patent (such as its customers in this District and throughout the United States). Schneider continues to induce infringement of the ’427 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’427 patent (since at least 2018), it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’427 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers’ infringement because, with knowledge of the ’427 patent, Schneider supplies the technology that allows its customers to infringe the patent.

57. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’427 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the ’427 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’427 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Schneider’s Accused Products (which are acts of direct infringement of the ’427 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the ’427 patent but took deliberate actions to avoid learning of these facts.

58. On information and belief, Schneider’s infringement of the ’427 patent has been willful and merits increased damages.

59. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the ’427 patent since at least 2018.

60. On information and belief, Schneider has made no attempt to design around the claims of the ’427 patent.

61. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’427 patent were invalid.

62. On information and belief, Schneider’s Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

63. Kortek has been damaged as the result of Schneider’s willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the ’427 patent unless and until it is enjoined by this Court.

64. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the ’427 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’427 patent.

65. The claim chart attached hereto as **Exhibit K** describes how the Accused Products practice every element of at least exemplary claim 1 of the ’427 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit K are representative of the components and functionality present in the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider’s infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the ’427 patent. Plaintiff reserves its right to

provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT III**

**PATENT INFRINGEMENT OF THE '313 PATENT**

66. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

67. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '313 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Schneider's Accused Products.

68. Schneider also indirectly infringes the '313 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least the issuance of the '313 patent on December 8, 2020, and in any event no later than the filing and service of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the '313 patent (such as its customers in this District and throughout the United States). Schneider continues to induce infringement of the '313 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the '313 patent, it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the '313 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers' infringement because, with knowledge of the '313 patent, Schneider supplies the technology that allows its customers to infringe the patent.

69. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’313 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the ’313 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’313 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Schneider’s Accused Products (which are acts of direct infringement of the ’313 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the ’313 patent but took deliberate actions to avoid learning of these facts.

70. On information and belief, Schneider’s infringement of the ’313 patent has been willful and merits increased damages.

71. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the ’313 patent since at least the issuance of the ’313 patent, given Schneider’s prior knowledge of Kortek’s patented technology and patent portfolio, and in any event no later than the filing and service of this Complaint.

72. On information and belief, Schneider has made no attempt to design around the claims of the ’313 patent.

73. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’313 patent were invalid.

74. On information and belief, Schneider's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

75. Kortek has been damaged as the result of Schneider's willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the '313 patent unless and until it is enjoined by this Court.

76. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '313 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the '313 patent.

77. The claim chart attached hereto as **Exhibit L** describes how the Accused Products practice every element of at least exemplary claim 1 of the '313 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit L are representative of the components and functionality present in the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '313 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT IV**

**PATENT INFRINGEMENT OF THE '869 PATENT**

78. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

79. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the ’869 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Schneider’s Accused Products.

80. Schneider also indirectly infringes the ’869 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least the issuance of the ’869 patent on October 1, 2019, and in any event no later than the filing and service of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the ’869 patent (such as its customers in this District and throughout the United States). Schneider continues to induce infringement of the ’869 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’869 patent, it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’869 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers’ infringement because, with knowledge of the ’869 patent, Schneider supplies the technology that allows its customers to infringe the patent.

81. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’869 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the ’869 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’869 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging its

customers to purchase and instructing them to use Schneider's Accused Products (which are acts of direct infringement of the '869 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '869 patent but took deliberate actions to avoid learning of these facts.

82. On information and belief, Schneider's infringement of the '869 patent has been willful and merits increased damages.

83. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the '869 patent since at least the issuance of the '869 patent, given Schneider's prior knowledge of Kortek's patented technology and patent portfolio, and in any event no later than the filing and service of this Complaint.

84. On information and belief, Schneider has made no attempt to design around the claims of the '869 patent.

85. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the '869 patent were invalid.

86. On information and belief, Schneider's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

87. Kortek has been damaged as the result of Schneider's willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the '869 patent unless and until it is enjoined by this Court.

88. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the '869 patent. Kortek will suffer further irreparable injury,

for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’869 patent.

89. The claim chart attached hereto as **Exhibit M** describes how the Accused Products practice every element of at least exemplary claim 1 of the ’869 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit M are representative of the components and functionality present in the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider’s infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the ’869 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court’s scheduling order.

## COUNT V

## PATENT INFRINGEMENT OF THE ’234 PATENT

90. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

91. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the ’234 patent, by making, using, testing, selling, offering for sale and/or importing into the United States Schneider’s Accused Products.

92. Schneider also indirectly infringes the ’234 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least 2018) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the ’234 patent (such as its customers in this District and throughout the United States).

Schneider continues to induce infringement of the ’234 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’234 patent (since at least 2018), it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’234 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers’ infringement because, with knowledge of the ’234 patent, Schneider supplies the technology that allows its customers to infringe the patent.

93. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’234 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the ’234 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’234 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Schneider’s Accused Products (which are acts of direct infringement of the ’234 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the ’234 patent but took deliberate actions to avoid learning of these facts.

94. On information and belief, Schneider’s infringement of the ’234 patent has been willful and merits increased damages.

95. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the ’234 patent since at least 2018.

96. On information and belief, Schneider has made no attempt to design around the claims of the ’234 patent.

97. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’234 patent were invalid.

98. On information and belief, Schneider’s Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

99. Kortek has been damaged as the result of Schneider’s willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the ’234 patent unless and until it is enjoined by this Court.

100. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the ’234 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’234 patent.

101. The claim chart attached hereto as **Exhibit N** describes how the Accused Products practice every element of at least exemplary claim 10 of the ’234 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit N are representative of the components and functionality present in the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider’s infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the ’234 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court’s scheduling order.

**COUNT VI**

## PATENT INFRINGEMENT OF THE '459 PATENT

102. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

103. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the '459 patent. With respect to the method claims of the '459 patent, including exemplary claim 1, Schneider itself performs each and every step of the claimed method within the United States, including inserting, into a receptacle configured to receive a plurality of pins, a device having an interface connection with at least one signal pin; initiating in a first mode of communication a two-way, peer-to-peer wireless communications link between a personal controller and the device; instructing the device either to maintain that first mode of communication or to change to a second mode of communication utilizing a non-peer-to-peer communications link; and issuing a command from the personal controller to vary the supply of electricity to the electrical apparatus. Schneider performs those steps in the United States during, among other activities, product development, engineering validation, testing and quality assurance, installation, commissioning, servicing and repair, technician and dealer training, trade show exhibitions, and customer demonstrations of the Accused Products.

104. Schneider also directs and controls the performance of each step of the claimed method by its employees, installers, and other agents acting on its behalf, such that performance of all steps is attributable to Schneider.

105. In the alternative, and independently of the foregoing, Schneider indirectly infringes the '459 patent by actively inducing the direct infringement of others under 35 U.S.C. § 271(b). Schneider's customers and end users in this District and throughout the United States directly

infringe at least exemplary claim 1 of the ’459 patent by performing every step of the claimed method when they insert the interface connection of an Accused Product into a receptacle configured to receive a plurality of pins and thereafter communicate with and control the Accused Product using the Schneider app running on a smartphone or other personal controller. With knowledge of the ’459 patent since at least 2018, Schneider knowingly and intentionally aids, abets, and induces that direct infringement by designing and configuring the Accused Products to be used in the infringing manner and by supplying setup guides, installation and device user guides, product manuals, quick-start and in-app instructions, brochures, videos, demonstrations, technical support, and website materials that instruct and encourage customers to perform each step of the claimed method. Schneider does so with the specific intent that its customers perform those steps and with knowledge that the induced acts constitute infringement of the ’459 patent. This allegation of induced infringement is pled independently and does not depend on any allegation that Schneider alone performs every step of the claimed method.

106. Schneider has also contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’459 patent (since at least 2018), it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’459 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use.

107. Schneider has knowledge that its activities concerning the Accused Products infringe one or more claims of the ’459 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to use the Accused Products in a manner that directly infringes the ’459 patent, and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’459 patent. Alternatively, Schneider

knows and/or will know that there is a high probability that the use of the Accused Products constitutes direct infringement of the ’459 patent but took deliberate actions to avoid learning of these facts.

108. On information and belief, Schneider’s infringement of the ’459 patent has been willful and merits increased damages.

109. On information and belief, Schneider has known that its activities concerning the Accused Products infringed one or more claims of the ’459 patent since at least 2018.

110. On information and belief, Schneider has made no attempt to design around the claims of the ’459 patent.

111. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’459 patent were invalid.

112. On information and belief, Schneider’s Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

113. Kortek has been damaged as the result of Schneider’s willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the ’459 patent unless and until it is enjoined by this Court.

114. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the ’459 patent. Kortek will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’459 patent.

115. The claim chart attached hereto as **Exhibit O** describes how the Accused Products practice every element of at least exemplary claim 1 of the ’459 patent, literally and/or under the doctrine of equivalents. The components, functionality, and method steps identified in Exhibit O

are representative of the components, functionality, and method steps present in and performed with respect to the Accused Products. This chart is illustrative and provides details regarding only examples of Schneider's infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the Accused Products infringe the '459 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

**COUNT VII**

**PATENT INFRINGEMENT OF THE '535 PATENT**

116. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

117. This Count is directed to Schneider's residential electric vehicle charging products, including the Schneider Charge residential electric vehicle charging station, which are a subset of the Accused Products and are referred to in this Count as the "'535 Accused Products." Schneider markets the Schneider Charge in the United States within its "Residential Charger" product category, describes it as an "Intelligent home level 2 EV Charger with built-in load management" designed by "the home electrification leader millions of homes trust," and states that "[t]hrough SmartAmp load management, Schneider Charge dynamically adjusts charging speed according to household energy use." *See* https://www.se.com/us/en/product-subcategory/405074973-residential-charger/ (last visited August 13, 2026). A device that Schneider designs for the home, that is installed within the home's electrical system, and that Schneider configures to modulate its operation according to household energy use is a household appliance within the meaning of the '535 patent.

118. Schneider has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least one claim of the ’535 patent, by making, using, testing, selling, offering for sale and/or importing into the United States the ’535 Accused Products.

119. Schneider also indirectly infringes the ’535 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b). Schneider has knowingly (since at least the issuance of the ’535 patent on February 7, 2023, and in any event no later than the filing and service of this Complaint) and intentionally actively aided, abetted and induced others to directly infringe at least one claim of the ’535 patent (such as its customers in this District and throughout the United States). Schneider continues to induce infringement of the ’535 patent. Schneider has contributorily infringed and is a contributory infringer under 35 U.S.C. § 271(c) because, with knowledge of the ’535 patent, it supplies a material part of a claimed combination that is especially made or especially adapted for use in infringing the ’535 patent and that is not a staple article or commodity of commerce suitable for substantial noninfringing use. Schneider contributes to its customers’ infringement because, with knowledge of the ’535 patent, Schneider supplies the technology that allows its customers to infringe the patent.

120. Schneider has knowledge that its activities concerning the ’535 Accused Products infringe one or more claims of the ’535 patent. On information and belief, Schneider will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the ’535 Accused Products (which are acts of direct infringement of the ’535 patent) and Schneider has and will continue to encourage those acts with the specific intent to infringe one or more claims of the ’535 patent. Further, Schneider provides information and technical support to its customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging

its customers to purchase and instructing them to use the ’535 Accused Products (which are acts of direct infringement of the ’535 patent). Alternatively, Schneider knows and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the ’535 Accused Products constitutes direct infringement of the ’535 patent but took deliberate actions to avoid learning of these facts.

121. On information and belief, Schneider’s infringement of the ’535 patent has been willful and merits increased damages.

122. On information and belief, Schneider has known that its activities concerning the ’535 Accused Products infringed one or more claims of the ’535 patent since at least the issuance of the ’535 patent, given Schneider’s prior knowledge of Kortek’s patented technology and patent portfolio, and in any event no later than the filing and service of this Complaint.

123. On information and belief, Schneider has made no attempt to design around the claims of the ’535 patent.

124. On information and belief, Schneider did not have a reasonable basis for believing that the claims of the ’535 patent were invalid.

125. On information and belief, the ’535 Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

126. Kortek has been damaged as the result of Schneider’s willful infringement, in an amount to be proven at trial. Upon information and belief, Schneider will continue to infringe one or more claims of the ’535 patent unless and until it is enjoined by this Court.

127. Schneider has caused and will continue to cause Kortek irreparable injury and damage by infringing one or more claims of the ’535 patent. Kortek will suffer further irreparable injury,

for which it has no adequate remedy at law, unless and until Schneider is enjoined from infringing the claims of the ’535 patent.

128. The claim chart attached hereto as **Exhibit P** describes how the ’535 Accused Products practice every element of at least exemplary claim 1 of the ’535 patent, literally and/or under the doctrine of equivalents. The components and functionality identified in Exhibit P are representative of the components and functionality present in the ’535 Accused Products. This chart is illustrative and provides details regarding only examples of Schneider’s infringement, and only as to a single patent claim, and is not intended to be an exhaustive or limiting explanation of every manner in which the ’535 Accused Products infringe the ’535 patent. Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court’s scheduling order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kortek respectfully requests the following relief:

A. A judgment that Schneider has directly infringed, either literally and/or under the doctrine of equivalents, and continues to directly infringe the Kortek Patents;

B. A judgment that Schneider has induced infringement and continues to induce infringement of the Kortek Patents;

C. A judgment that Schneider has contributorily infringed and continues to contributorily infringe the Kortek Patents;

D. A judgment and order requiring Schneider to pay Plaintiff damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

E. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

F. A judgment and order requiring Schneider to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded, without any limitation by 35 U.S.C. § 287;

G. A judgment and order awarding a compulsory ongoing royalty;

H. A judgment and order awarding Plaintiff costs associated with bringing this action;

I. A judgment granting a permanent injunction that restrains and enjoins Schneider, its officers, directors, divisions, employees, agents, servants, parents, subsidiaries, successors, assigns, and all those in privity, concert or participation with them from directly or indirectly infringing the Kortek Patents; and

J. Such other and further relief as the Court deems just and equitable.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38, Plaintiff Kortek hereby demands a trial by jury on all issues so triable.

Dated: August 14, 2026

Respectfully submitted,

By: /s/ Erick S. Robinson

Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
CHERRY JOHNSON SIEGMUND JAMES PC
104 E Houston Street, Suite 115
Marshall, Texas 75670
Telephone: (713) 498-6047
Facsimile: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
"Grace" Shuya Yang
Texas Bar No. 24144144
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
gyang@cjsjlaw.com

Shaun Gregory
Virginia Bar No. 86349 (admitted in this District)
CHERRY JOHNSON SIEGMUND JAMES PC
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
sgregory@CJSJLAW.com

*Attorneys for Plaintiff*
*Kortek Industries Pty Ltd.*